## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHITA ALIPERIO and EMILE HERIVEAUX,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>BANK OF AMERICA, N.A., Successor by Merger to BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS, INC.; and KEARNY BANK, formerly known as KEARNY FEDERAL SAVINGS BANK,<br><br>　　　　Defendants. | Civ. No. 2:16-CV-01008-KM-MAH<br><br>**OPINION** |

　　　　This action follows one in New Jersey state court that defendant Kearny Bank ("Kearny") brought to foreclose on the Paramus, New Jersey, property of *pro se* plaintiffs Chita Aliperio and Emile Heriveaux. Plaintiffs now seek to contest the enforceability of the mortgage documents on which that foreclosure action was based. They also allege that the defendants violated the federal Racketeer Influenced and Corrupt Organizations Act (RICO) in the course of servicing and executing assignments of Plaintiffs' mortgage.

　　　　Now before the Court are two motions to dismiss the complaint: one (ECF no. 15) brought by defendant Kearny, and the other (ECF no. 16) by defendants Countrywide Home Loans, Inc. ("Countrywide") and Bank of America, N.A. ("BANA"). All three defendants argue that the complaint fails to state a claim. In addition, BANA and Countrywide argue that this court lacks jurisdiction pursuant to the *Rookman-Feldman* doctrine, and that the claims are barred by *res judicata* principles, including New Jersey's Entire Controversy Doctrine. (ECF no. 15). For the reasons explained below, *Rooker-Feldman* and preclusion doctrines do not bar Plaintiffs' claims. I will grant Defendants'

motions to dismiss the complaint, however, primarily because it fails to allege constitutional injury-in-fact or RICO standing.

**Background**

*1. Plaintiffs' Note and Mortgage*

On March 12, 2007, Ms. Aliperio took out a $650,000 refinance loan from Fairmount Funding Ltd. ("Fairmount"), evidenced by a promissory note. To secure payment on the note, Aliperio and Heriveaux executed a mortgage on their property to Fairmount's nominee, Mortgage Electronic Registration System, Inc. ("MERS"). Over the next several years, the loan was serviced by an entity first known as Countrywide Home Loans Servicing LP ("Countrywide Servicing"), and later as BAC Home Loans Servicing, LP ("BAC Servicing"). Then, as the result of a merger, the servicer of the loan became BANA. (Compl. ¶¶ 11–18, 117–118, 122, 131; *see* Kearny Br. 4)[1]

In February and July of 2011, the Plaintiffs were notified that they were in default of their payment obligations by way of Notices of Intention of Foreclosure (NOIs). (The first was sent by BAC Servicing and the second by BANA). Plaintiffs cured both defaults. (*Id.* ¶¶ 119–120, 123) Thereafter, however, Plaintiffs stopped making payments and never again cured their defaults. Between August 19, 2011, and February 4, 2015, BANA sent Plaintiffs

---

[1]     For purposes of this opinion, citations to the record will hereinafter be abbreviated as follows:

- "Compl." – Complaint, ECF no. 1
- "BANA Br." – Memorandum of Law in Support of Bank of America, N.A.'s R.12(b)(1) and (6) Motion to Dismiss the Complaint with Prejudice, ECF no. 15-2
- "Kearny Br." –  Brief of Defendant Kearny Bank in Support of Motion to Dismiss the Complaint, ECF no. 16-1
- "Pl. Br." – Brief of Plaintiffs Chita Aliperio and Emile Heriveaux in Opposition to Defendant Kearny Bank and Bank of America's Motions to Dismiss the Complaint, ECF no. 18
- "BANA Reply" – Reply Memorandum of Law in Support of Bank of America, N.A.'s R.12(b)(1) and (6) Motion to Dismiss the Complaint with Prejudice, ECF no. 20

forty-two monthly loan statements reporting a total of $243,567.97 due. Between March 2012 and June 2013, BANA sent Plaintiffs another three NOIs. (*Id.* 124–127, Exs. B-3, B-4, B-5) At some point, BANA referred Plaintiffs' loan to a law firm (the "Phelan firm") for collection. (*Id.* ¶ 128) The Phelan firm sent Plaintiffs a letter on December 18, 2013, which sought payment of $749,446.71— a figure representing all outstanding principal, interest, and fees. (*Id.*; Kearny Br. 3-4.)[2]

*2. The State Foreclosure Proceedings*

On March 14, 2014, Kearny, as assignee of the note and mortgage, filed a foreclosure complaint against Plaintiffs (as I call them, though they were defendants in that action) in the Superior Court of New Jersey, Chancery Division, Bergen County (the "State action"). On March 28, 2014, the Phelan firm recorded a notice of *lis pendens* on the mortgaged property. (Compl. ¶ 24, Ex. C-4) Plaintiffs appeared *pro se* in the State action. Their answer alleged that several of the interim assignments of the mortgage had been invalid and asserted counterclaims. (*Id.*)

Kearny moved to dismiss the counterclaims and Plaintiffs cross-moved for summary judgment. On July 21, 2014, the Honorable Peter E. Doyne, A.J.S.C., dismissed Plaintiffs' counterclaims with prejudice for failure to state a claim, and denied Plaintiffs' cross-motion. (*Id.* Ex. C (July 21, 2014 Order)) Judge Doyne also denied Plaintiffs' motion for reconsideration on October 10, 2014. (*Id.*; Compl. Ex. C-5.)[3]

---

[2]    In summarizing the proceedings in the state court foreclosure action, I rely in part on copies of pleadings and orders filed in that proceeding, which are attached to Plaintiffs' complaint and/or to the defendants' papers. For the reasons stated below, *see* pp. 9–10, infra, I may take judicial notice of them, and they may in any event be considered as matters intrinsic to Plaintiffs' federal complaint. I do not consider them for the truth of factual contentions made therein, but only as evidence of the issues that were raised before, or decided by, the state court.

[3]    In a rider to the order denying reconsideration, Judge Doyne noted: "Without disrespect it is clear that movant's motion and brief, and reply brief, as with prior motions and briefs, has apparently been 'ghost written' and the writer not identified." (Compl. Ex. C-5 (Rider to Order Dated October 10, 2014) at 2 n.1). He raised the

Those dismissed counterclaims included "two counts of theft on behalf of Kearny pursuant to N.J.S.A. 2C:20-7(a); N.J.S.A. 2C:20-7b(1); and N.J.S.A. 2C:20-1(e) and four counts of perjury premised upon the conduct of [Kearny] and [Kearny]'s attorney . . . pursuant to N.J.S.A. 2C:28-1." (*Id.* at 9.) Plaintiffs premised these counterclaims on theories that Kearny knowingly used invalid assignments to collect $273,714.73 through BANA. They contested the assertions of Kearny and its counsel that the invalid assignments were inadvertent and of no consequence to chain of title; indeed they characterized those assertions as perjurious. Kearny and its counsel also committed perjury, said Plaintiffs, by virtue of their inability to produce documents proving Kearny was entitled to sue as assignee of the mortgage. (*Id.* at 10.) Judge Doyne, in denying the motions, necessarily found that Kearny did have standing to bring a foreclosure action. (*Id.* at 11.)

Following discovery in the State court action, Kearny filed a motion for summary judgment and Plaintiffs again cross-filed for summary judgment. On December 22, 2014, Judge Doyne denied Plaintiffs' cross-motion and granted Kearny's motion for summary judgment. He ordered that a default be entered against Plaintiffs and remanded the case to the Foreclosure Unit for final judgment. (Compl. Ex. C-10 (Order for Summary Judgment and Default)). Judge Doyne explained that a series of invalid transfers had concededly occurred early in the life of the Plaintiffs' mortgage. In 2013, however, well before Kearny filed its foreclosure complaint, it was validly transferred to

---

question again in his December 22, 2014 opinion. (*See* Compl. Ex. C-10.) Plaintiffs decry Judge Doyne's insinuation, alleging that their legal wisdom is divinely bestowed and accusing Judge Doyne of "tr[ying] to destroy" them "by all means." (Compl. ¶ 69)

I make no finding, but caution Plaintiffs that, to the extent they have used any "ghostwriting" services in this action, they should disclose any unnamed counsel in any further proceedings. *See generally Delso v. Trustees For Ret. Plan For Hourly Employees of Merck & Co.*, No. CIVA 04-3009 AET, 2007 WL 766349, at *12–18 (D.N.J. Mar. 6, 2007) (determining that "ghostwriting activity violated the [Rules of Professional Conduct], the spirit of Fed. R. Civ. P. 11 and L. Civ. R. 11.1, as well as public policy").

Kearny pursuant to corrective assignments and recordings. (Compl. Ex. C-10 (Dec. 22, 2014 Opinion) at 3–4, 16.) Therefore, because Kearny had demonstrated a prima facie right to foreclose (having established execution of the mortgage, recording, and non-payment), and because Plaintiffs failed as a matter of law to contest the validity of the mortgage or create an issue concerning Kearny's right to foreclose, Judge Doyne held Plaintiffs' answer to be uncontesting. (*Id.* at 7, 21–22.)

Despite receiving a favorable summary judgment decision, upon remand to the Foreclosure Unit Kearny requested that the action be voluntarily dismissed. (Compl. Ex. C-11.) In its briefing before this court, Kearny does not explain why it pursued this strategy.[4] Kearny does acknowledge, however, that final judgment was never entered in the foreclosure action. (Kearny Br. 6.) The foreclosure action closed February 4, 2015, upon voluntary dismissal without prejudice. (*Id.*) Thereafter, the Phelan firm recorded a discharge of notice of *lis pendens* in the county office. (Compl. Ex. C-13.)

*3. This Federal Complaint*

On February 23, 2016, Plaintiffs filed their federal complaint in this action. It is quite lengthy, running to some 98 pages. In broad strokes, the allegations in the complaint most helpful for understanding Plaintiffs' claims are as follows:

- None of the defendants ever held legal or equitable title to Plaintiffs' mortgage. (*E.g.*, Compl. ¶¶ 79-87)

---

[4] According to Judge Doyne's December 22, 2014 opinion, it was at a December 18, 2014 oral argument on Kearny's motion for summary judgment that Kearny's counsel sought to withdraw its summary judgment motion and voluntarily dismiss its complaint without prejudice. (Compl. Ex. C-10, Dec. 22, 2014 Opinion, at 6.) Plaintiffs objected to the extent of requesting dismissal *with* prejudice. (*Id.*) The court denied Kearny's application to withdraw and decided the motion, as discussed *supra*. (*Id.*) Seemingly confounded by Kearny's about-face, however, Judge Doyne observed in a footnote: "Because counsel was directed to not to [sic] affirmatively urge the relief requested, only on the basis of surmise, it would appear the original of the note is now lost or unavailable, but with no finding by this court that matter is now left for the Office of Foreclosure." (*Id.* at 6 n.3.)

- Defendants engaged in several fraudulent assignments of the mortgage (*id.* ¶¶ 100-102), giving rise to "unlawful transfer[s] of $650,000.00 interest in Plaintiffs' immovable property." (*Id.* ¶ 92)

- Countrywide Servicing sold residential mortgage loans to residential mortgage backed securitization trusts without transferring the original promissory notes to the trusts. (*Id.* ¶ 92) BANA profited to the tune of $2,125,500 when Plaintiff's loan defaulted. (*See Id.* ¶¶ 97-98)[5]

- Kearny never properly held or owned the promissory note and lied about this in the State action by holding itself out as the proper owner. BANA also made misrepresentations to this effect in its NOIs and state court filings. (*E.g., id.* ¶¶ 30-34, 43-62)[6]

- Judge Doyne's opinions in the State action contained legal errors and indicia of bias against Plaintiffs. (*Id.* ¶¶ 35-39, 69)

- The defendants committed robbery when they invalidly transferred Plaintiffs' mortgage. (*E.g., id.* ¶¶ 1, 59–61, 99–103, 146–147)

- The defendants committed mail fraud when they sent monthly loan statements requesting payment and NOIs to Plaintiffs, and collected a sum of $2,399,277.31 [an apparent reference to profits on Credit Default Swap ("CDS") investment vehicles, *see* n.5, *supra*] using multiple copies of Plaintiffs' mortgage. (*Id.* ¶¶ 124–128)

- BANA unlawfully resumed sending monthly loan statements to Plaintiffs after the State action was dismissed and the *lis pendens* discharged, including nine fraudulent and threatening statements from February 4, 2015, through October 16, 2015. (*Id.* ¶ 129)

---

[5]    Plaintiffs appear to base their calculations on a financial report which states generally that BANA received 3.27 times the value of defaulted loans that were packaged within Credit Default Swap ("CDS") investment vehicles. It is not at all clear that the mortgage in question here was used in this fashion, but for present purposes I will assume it was. Many of Plaintiffs' allegations are loosely premised on allegations in other litigation filings, financial reports, and news articles. BANA's profits from its investment vehicles, whatever they were, and to whatever extent they were or were not excessive or illegitimate, are not a measure of Plaintiffs' losses. Plaintiffs were not investors in the CDSes.

[6]    Plaintiffs allege that, although Kearny submitted copies of the note in its filings to the court in the foreclosure action, Kearny never produced the original note in discovery and that copies of the note submitted to the state court were counterfeit. (*See, e.g.,* Compl. ¶ 63)

The counts of the federal complaint allege the following:

- **Count 1**: Countrywide violated the RICO Act, 18 U.S.C. § 1962(c), causing Plaintiffs to suffer $273,777.31 of "injury in their property," by unlawfully collecting loan payments from Plaintiffs. (Compl. ¶¶ 133-158)

- **Count 2**: Countrywide and Kearny violated the RICO Act, 18 U.S.C. § 1962(d), causing Plaintiffs to suffer $273,777.31 of "injury in their property," by unlawfully collecting loan payments from Plaintiffs. (*Id.* ¶¶ 159-172)

- **Count 3**: BANA violated the RICO Act, 18 U.S.C. § 1962(c), causing Plaintiffs to suffer $2,125,500.00 of "injury in their property," by unlawfully transferring Plaintiffs' mortgage and including a duplicate of the mortgage in BANA's portfolio, which gave rise to BANA's gains on CDSes. (*Id.* ¶¶ 173-196)

- **Count 4**: BANA violated the RICO Act, 18 U.S.C. § 1962(c), causing Plaintiffs to suffer $1,781,452.00 of "injury in their property," by unlawfully transferring Plaintiffs' mortgage and including three duplicates of the mortgage in BANA's portfolio, which gave rise to BANA's gains on CDSes. (*Id.* ¶¶ 197-223)

- **Count 5**: BANA and Kearny violated the RICO Act, 18 U.S.C. § 1962(d), causing Plaintiffs to suffer $1,781,452.00 of "injury in their property," by conspiring to make five unlawful transfers and including duplicates of Plaintiffs' mortgages in BANA's portfolio, which gave rise to BANA's gains on CDSes. (*Id.* ¶¶ 224-241)

- **Count 6**: Plaintiffs seek declaratory and injunctive relief against all defendants stating that Plaintiffs' mortgage is unenforceable, that defendants are not real parties in interest, and that defendants cannot pursue foreclosure. Plaintiffs also allege that BANA, in agreement with Kearny, violated the RICO Act, 18 U.S.C. §§ 1962(c), (d), by violating certain consent orders with government entities, thereby causing Plaintiffs $4,180,729.31 worth of "ongoing" "injury in their property." (*Id.* ¶¶ 242-254)

With respect to the RICO counts, Plaintiffs allege "predicate acts" of robbery and mail fraud.[7] (*E.g., id.* ¶¶ 156, 169–170, 196–194)

---

[7]     Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct of participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ," and a

Plaintiffs ask for general damages in the amounts of $273,777.31, $2,125,500.00, and $1,781,452.00, all trebled pursuant to 18 U.S.C. § 1964(c), and well as attorney's fees and costs; pre-judgment interest; damages allegedly resulting from the State action; declaratory judgment; and equitable relief pursuant to 18 U.S.C. § 1964(a), including an order for the defendants to disgorge $4,180,729.31 collected under Plaintiffs' mortgage, and temporary restraining orders and injunctions prohibiting the defendants from foreclosing on Plaintiffs' property. (Compl. pp. 96–97)

**Legal Standard**

BANA and Countrywide have moved to dismiss the Complaint for lack of jurisdiction, citing the *Rooker-Feldman* doctrine and lack of constitutional standing. Rule 12(b)(1) governs jurisdictional challenges to a complaint. These may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438.

A factual attack, on the other hand, permits the Court to consider evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Thus "Rule 12(b)(1) does not provide

---

pattern of racketeering requires at least two "predicate acts" within a ten-year period. *Hlista v. Safeguard Properties, LLC*, 649 F. App'x 217, 221 (3d Cir. 2016); 18 U.S.C. § 1961(5). Section 1962(d) prohibits conspiracy to violate other, substantive provisions of Section 1962, including subsection (c).

plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendants contend that the complaint fails to allege RICO standing and fails to state a claim, and therefore should be dismissed. In addition, BANA and Countrywide contend that the claims are barred by res judicata, collateral estoppel, and New Jersey's Entire Controversy Doctrine. Those are all affirmative defenses that may be considered on a Fed. R. Civ. P. 12(b)(6) motion if their applicability can be determined from the face of the complaint and documents properly considered.

Under Fed. R. Civ. P. 12(b)(6), the defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

In connection with the motions, the parties proffer materials extrinsic to the complaint. These consist for the most part of records of the state court foreclosure proceeding. These are cited, not for the facts contained therein, but only in order to establish the nature and scope of prior proceedings between the parties, and the rulings of the state court.

Such records are subject to judicial notice:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case). *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

Even setting aside judicial notice, however, records of the foreclosure action that are intrinsic to the allegations of the complaint may be considered without converting a facial Rule 12(b)(1) challenge into a factual one, or a Rule 12(b)(6) motion into one for summary judgment. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("[A] 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Where plaintiffs, like Ms. Aliperio and Mr. Heriveaux, are proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings

10

drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

## Analysis

1. The Rooker-Feldman Doctrine

The *Rooker-Feldman* doctrine is of jurisdictional stature. It bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284 (2005). *Rooker-Feldman* thus operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court, claiming constitutional or other error. *See B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013).

*Rooker-Feldman* has four essential prerequisites:

> (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Robinson v. New Jersey Mercer Cty. Vicinage-Family Div.*, 514 F. App'x 146, 150 (3d Cir. 2013) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir.2010)).

Inherent in these prerequisites is the requirement that the prior state court's judgment be final. *See, e.g., Reisinger v. Cty. of Luzerne*, 439 F. App'x 190, 191 (3d Cir. 2011) (where county tax claim bureau determined plaintiff

failed to pay taxes but tax-sale proceeding was still ongoing, "[t]he state-court proceeding . . . lacked the finality necessary to trigger *Rooker–Feldman's* jurisdictional bar"); *see also Lance v. Dennis,* 546 U.S. 459, 463, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006) ("[U]nder what has come to be known as the *Rooker–Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over *final* state-court judgments." (emphasis added)).

The threshold question here, as I see it, is whether the State court's dismissal of Plaintiffs' counterclaims was sufficiently final for *Rooker-Feldman* purposes. As Plaintiffs urge and Kearny acknowledges, the State action was voluntarily dismissed without prejudice. (Pl. Br. 14; Kearny Br. 6) Thus (as BANA admits) "during the post-summary judgment phase the action . . . still [needed to] be referred to the Office of Foreclosure as to the plaintiffs' affirmative foreclosure claim to determine the amount of the debt owed . . . ." (BANA Br. 5–6 n.5) In short, final judgment, as that term is ordinarily understood, was never entered.

BANA and Countrywide argue *Rooker-Feldman* nevertheless applies because, when Judge Doyne dismissed Plaintiffs' counterclaims with prejudice, "final judgment was effectively rendered as to those claims." (BANA Reply 4) BANA and Countrywide cite recent opinions by other judges in this district applying *Rooker-Feldman* in the context of counterclaims in foreclosure that were dismissed with prejudice. (*See* BANA Br. 5 n.5 (citing *Martinez v. Bank of America,* No. 2:15-cv-08926-JLL-JAD, ECF no. 15 (D.N.J., March 22, 2016)); BANA Reply 4 (citing *Thomas v. Wells Fargo Bank, N.A.,* No. CIV.A. 15-871 JLL, 2015 WL 3879804, at *2 (D.N.J. June 22, 2015))).

Reviewing the defendant's briefing in *Martinez,* I conclude that in that case, like this one, final judgment was never entered—there, because the parties entered into a loan modification agreement. *See* Defendants' Memorandum of Law, *Martinez v. Bank of America,* No. 2:15-cv-08926-JLL-JAD, ECF no. 12-10, at 13 (admitting that final judgment had not been entered in the context of a collateral estoppel argument). That may have been the

situation in another case, *Thomas*, as well, although the record is less clear. *See, e.g.*, Exhibit H to Defendants' Memorandum of Law, *Thomas v. Wells Fargo Bank, N.A.*, No. CIV.A. 15-871 JLL, ECF no. 20-12 (state action docket appended to defendant's motion to dismiss, showing "active" case status).

But those cases, even if procedurally similar in some respects, do not address the issue raised here: whether Judge Doyne's judgment on the counterclaims was final, or at least sufficiently final, for purposes of *Rooker-Feldman*. *See Martinez*, ECF no. 15, at 2–3, 6–9 (indicating only that the parties entered into a loan modification agreement subsequent to summary judgment);[8] *Thomas*, 2015 WL 3879804, at *2–3 (no mention of final disposition of state action). It seems that the critical issue of finality may not have been properly presented to or considered by those courts.

At any rate, those decisions of coordinate judges would not bind me, even if on point (and, as I have said, I am not persuaded that they are). For my own part, I recently held that *Rooker-Feldman* did not apply in a case with a very similar procedural state court history, because the state court judgment was not final. *See Farah v. Lasalle Bank Nat'l Ass'n*, No. CV 15-CV-2602 (KM), 2016 WL 1162644, at *6–9 (D.N.J. Mar. 23, 2016). In that case, as here, the State court filed an order providing, *inter alia*, (1) that summary judgment on the merits of the mortgage foreclosure was granted; (2) that the counterclaims were dismissed with prejudice; and (3) that the matter would be transferred to the Foreclosure Unit to proceed as an uncontested matter.[9] *Id.* at *4. I

---

[8]     The Third Circuit has explained that a settlement agreement between the parties has the same claim-preclusive force as a judicial decree. *See Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 74 (3d Cir.1985). Therefore, it may be that the loan modification could have been properly deemed a final judgment for this purpose.

[9]     A bit of background on New Jersey's judicial foreclosure process, as I reviewed it in *Farah*:

> New Jersey is a judicial foreclosure state. At least where a contesting answer is filed, the case begins its journey in the Superior Court. Defenses and counterclaims are heard or disposed of there, typically on summary judgment. Such include, *e.g.*, payment and discharge, failure of

determined that *Rooker-Feldman* did not apply because final judgment, even if considered inevitable, had not yet been entered, and a state court's interlocutory orders are insufficient to trigger the Doctrine: "The final judgment, for purposes of *Rooker-Feldman*, is not the summary judgment rendering the foreclosure uncontested, but the actual final judgment of foreclosure. Such a final judgment of foreclosure (always labeled as such) determines both the *right* to foreclose and the *amount* due on the mortgage." *Id.* at *7–8. *Cf. Fraize v. Gov't Nat'l Mortg. Ass'n*, No. 14-CV-7152 (KM), 2016 WL 958392, at *4 & n.3 (D.N.J. Mar. 14, 2016) (citing summary of New Jersey law establishing that a state foreclosure judgment is final for purposes of *Rooker-Feldman*, and applying the doctrine where final judgment of foreclosure was entered and only the sheriff's sale was stayed).

  The rationale of *Rooker-Feldman* is that a federal court should not be asked to usurp the function of the state appellate courts. New Jersey, like the

---

consideration, incorrect computation of the amounts due, fraud, mistake, waste, credit for rental value of the mortgaged premises, usury, unjust enrichment, setoff, recoupment, non-compliance with regulatory pre-requisites to foreclosure, and abatement of the mortgage debt. Although a broad range of defenses and counterclaims are appropriately heard, they must be "germane" to the mortgage foreclosure. *See LaSalle Nat. Bank v. Johnson*, No. F-12888-05, 2006 WL 551563, at *2 (N.J. Super. Ct. Ch. Div. Mar. 3, 2006) (citing Scott T. Tross, New Jersey Foreclosure Law and Practice § 1 at 162-65 (2001)); *see also* S.B. Pressler & P.G. Verneiro, N.J. Ct. R. annot. 4:64-1, comment 3.3. If the defenses survive, the action is "contested"; if not, it is deemed "uncontested" and may be referred to the Office of Foreclosure. An uncontested action is one in which (1) all defendants have failed to answer or plead; or, as more relevant here, "(2) none of the pleadings responsive to the complaint either contest the validity or priority of the mortgage or lien being foreclosed or create an issue with respect to plaintiff's right to foreclose it; or (3) all the contesting pleadings have been stricken or otherwise rendered noncontesting." N.J. Ct. R. 4:64-1(c).

2016 WL 1162644, at *11 n.2.

federal system, generally provides for appeal of final trial court decisions. *Compare* N.J. Ct. R. 2:2-3, *with* 28 U.S.C. § 1291. Thus appealability doctrines, although they serve other concerns, provide insight into the concept of finality. It makes practical sense that only an actual final judgment of foreclosure is sufficient for purposes of *Rooker-Feldman,* because it is only at that point (with irrelevant exceptions) that the trial court's decision becomes final and appealable within the New Jersey state court system. *See, e.g., Wells Fargo Bank,* 416 N.J. Super. at 523, 6 A.3d at 483 (summary judgment striking defenses is more properly deemed "partial summary judgment" and is not a final, appealable judgment); *LaSalle Bank Nat. Ass'n v. Feranda,* 2010 WL 4702277 (N.J. Super. App. Div. Nov. 22, 2010) (order striking answer and defense and transferring the matter to the foreclosure unit is interlocutory and not appealable).

*Farah* applies here. True, the procedural posture is distinguishable in that there, the state court action was still pending when the federal complaint was filed. *See id.* at *9. Our situation, in which final judgment is not merely pending, but actually has been forestalled by a dismissal without prejudice, would seem to be if anything an *a fortiori* case.

The parties agree that the prior dismissal was without prejudice. And, under New Jersey law:

> It is well established that, once a plaintiff obtains a voluntary dismissal without prejudice, "another action may be instituted and the same facts urged, either alone or in the company of others as a basis for relief." *Arena v. Borough of Jamesburg,* 309 *N.J. Super.* 106, 110 (App. Div.1998) (citations and internal quotations omitted). Entry of such a dismissal "leaves the situation as if the action never had been filed." *Ibid.* (quoting 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* Civil 2d § 2367 (1995)); *see also Czepas v. Schenk,* 362 *N.J. Super.* 216, 228 (App. Div.) ("A dismissal without prejudice means that there has been no adjudication on the merits and that a subsequent complaint alleging the same cause of action will not be barred by reason of its prior

dismissal."), *certif. denied,* 178 *N.J.* 374 (2003). Such a dismissal of an action by a plaintiff without prejudice "adjudicates nothing." *N.J. Div. of Youth & Family Servs. v. A.P.,* 408 *N.J. Super.* 252, 263 (App.Div.2009) (citations omitted), *certif. denied,* 201 *N.J.* 153 (2010).

*Dobbins v. Dobbins,* No. A-5982-13T3, 2015 WL 3603626, at *4 (N.J. Super. Ct. App. Div. June 10, 2015).

In short, "without prejudice" is almost synonymous with "not final." For these reasons, New Jersey courts have explained that "a voluntary dismissal without prejudice may not be used as a maneuver to make an interlocutory order appear to be a final judgment." *Triffin v. Wawa, Inc.,* No. A-3754-08T1, 2010 WL 246148, at *2 (N.J. Super. Ct. App. Div. Jan. 25, 2010). *See also Grow Co. v. Chokshi,* 403 *N.J.Super.* 443, 461, 959 A.2d 252 (N.J. Super. Ct. App. Div. 2008) ("The methodology of dismissing unadjudicated claims without prejudice in order to create the appearance of a final order confounds the manner in which appellate jurisdiction was meant to arise in our judicial system.").[10]

BANA and Countrywide essentially argue that Judge Doyne's interlocutory adjudication of Plaintiffs' counterclaims with prejudice was nevertheless final, even if summary judgment in favor Kearny was not. (BANA Reply 4) But the New Jersey Supreme Court has specifically rejected this logic, explaining:

> Where a suit involves multiple claims, as here, a court may direct the entry of a final judgment upon less than all of the claims only if it determines there is no just reason for delay. R. 4:42-2. In the absence of such direction and determination, an order which adjudicates less than all of the claims is not

---

[10]    Federal law is similar. *See Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.,* 316 F.3d 431, 438-39 (3d Cir. 2003) (final-decision appealability rule requires that litigant "relinquish" all rights to further litigation of claim); *Verzilli v. Flexon,* 295 F.3d 421, 424 (3d Cir. 2002) (where parties stipulated to dismissal but reserved right to litigate claim in the event of appellate reversal, judgment was not final and appealable).

appealable as of right before the entry of judgment adjudicating all the claims.

*Butler v. Bonner & Barnewall, Inc.,* 56 N.J. 567, 573, 267 A.2d 527, 530 (1970) (citing N.J. Ct. R. R. 4:42-2). Indeed, New Jersey Rule of Court 4:42-2 cautions:

> In the absence of such direction, any order or form of decision which adjudicates *fewer than all the claims as to all the parties shall not terminate the action as to any of the claims,* and it shall be *subject to revision at any time before the entry of final judgment* in the sound discretion of the court in the interest of justice.

N.J. Ct. R. R. 4:42-2 (emphases added). Again, not final.

For these reasons, *Rooker-Feldman* does not deprive this court of jurisdiction to assess the merits of Plaintiffs' complaint.

### 2. Res Judicata and the Entire Controversy Doctrine

BANA also argues that Plaintiffs' claims are barred by doctrines of *res judicata,* including New Jersey's entire controversy doctrine. (BANA Br. 6–9) Because these contentions are properly considered under Rule 12(b)(6), it may seem anomalous to discuss them in advance of standing, which has a strong component of subject matter jurisdiction. *See, e.g., Rycoline Prod., Inc. v. C & W Unlimited,* 109 F.3d 883, 886 (3d Cir. 1997). But because these preclusion doctrines share many features of *Rooker-Feldman* (and because I find them inapplicable for similar reasons), it is convenient to discuss them here. I will then return to the question of standing in section 3, *infra.*

Claims that survive *Rooker-Feldman* may nevertheless be barred by *res judicata* doctrines such as claim preclusion, issue preclusion, and the entire controversy rule.[11] Here, however, the same lack of finality that doomed

---

[11]    The Third Circuit's preferred usage of the term "*res judicata*" "encompasses both claim and issue preclusion." *United States v. 5 Unlabeled Boxes,* 572 F.3d 169, 174 (3d Cir. 2009) (quoting *Venuto v. Witco Corp.,* 117 F.3d 754, 758 n. 5 (3d Cir. 1997)). "Collateral estoppel customarily refers to issue preclusion, while res judicata, when used narrowly, refers to claim preclusion." *United States v. 5 Unlabeled Boxes,* 572 F.3d 169, 174 (3d Cir. 2009).

Whether a state court judgment should have a preclusive effect in a subsequent federal action depends on the law of the state that adjudicated the original action.

*Rooker-Feldman* also subverts *res judicata*. The entire controversy doctrine, the broadest version of *res judicata,* is an apt bellwether for the other, narrower doctrines.

The entire controversy doctrine has been described as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited,* 109 F.3d 883, 886 (3d Cir. 1997). Like ordinary *res judicata,* the State's entire controversy doctrine applies in federal court "when there was a previous state-court action involving the same transaction." *Bennun v. Rutgers State Univ.,* 941 F.2d 154, 163 (3d Cir. 1991). It extinguishes any subsequent federal-court claim that permissibly could have been, but was not, joined in the prior state action. The doctrine aims to avoid piecemeal decisions, promote efficiency, and ensure "fairness to parties to an action and to others with a material interest in it." *Paramount Aviation Corp. v. Agusta,* 178 F.3d 132, 137 (3d Cir. 1999).

The entire controversy doctrine is governed by New Jersey Court Rule 4:30A. In the mortgage foreclosure context, that Rule incorporates Rule 4:64-5, which explicitly limits claims in a foreclosure action to those which are "germane" to the foreclosure. *See Leisure Technology-Northeast v. Klingbeil Holding Co.,* 137 N.J. Super. 353, 349 A.2d 96 (App. Div. 1975). Challenges to the enforceability of a mortgage should have been—and indeed were—joined in the State foreclosure action here. Related RICO claims premised on unlawful conduct in connection with a mortgage transaction have been found to be "germane" as well. *See, e.g., Patrick v. Am.'s Servicing Co.,* No. CIV. 2:14-6563 WJM, 2015 WL 1759567, at *3 (D.N.J. Apr. 17, 2015) (barring RICO claim premised on allegations that mortgage broker acted fraudulently by receiving kickbacks); *Joan Ryno, Inc. v. First Nat. Bank of S. Jersey,* 208 N.J. Super. 562, 569, 506 A.2d 762, 766 (App. Div. 1986) (challenges to right to foreclose are subject to entire controversy doctrine).

---

*Rose v. City of Allentown,* 211 F. App'x 133, 137 (3d Cir. 2007) ("A federal court refers to the preclusion law of the state in which judgment was entered.").

Nevertheless, the issue of finality again requires that the motion to dismiss on these grounds be denied. As noted above, the requirement of finality under *Rooker-Feldman* is quite clear. Likewise, the traditional doctrines of claim and issue preclusion require a judgment that is final in the ordinary sense.[12] The entire controversy finality requirement may incorporate a measure of flexibility where a party has manipulated the judicial system. Nevertheless, even for purposes of the entire controversy doctrine, I cannot find that the prior judgment here was final.

The entire controversy doctrine generally bars a subsequent action "only when the prior action at issue has been tried to judgment or settled." *Kaselaan & D'Angelo Assocs., Inc. v. Soffian,* 290 N.J. Super. 293, 299, 675 A.2d 705 (App. Div. 1996). To that extent, it is parallel to traditional *res judicata* doctrines. *Rycoline Prod., Inc.,* 109 F.3d at 889 (noting "the close relation between the Entire Controversy Doctrine and traditional res judicata principles," and remarking that "[o]ne of the prerequisites to the application of res judicata in New Jersey, as elsewhere, is the existence of a prior judgment that is final, valid, and on the merits.")

In particular, then, the entire controversy doctrine does not apply to a case like this one: "[W]hen a prior action has been dismissed without prejudice prior to trial, a plaintiff is not barred from filing a subsequent action based on

---

[12]    New Jersey's claim and issue preclusion doctrines very clearly require a judgment in the previous action that is final in the ordinary sense. *See Winters v. N. Hudson Reg'l Fire & Rescue,* 212 N.J. 67, 50 A.3d 649, 659 (2012) (collateral estoppel, or issue preclusion, requires (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a *final judgment* on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. (emphasis added)); *Thomas v. Jersey Mortg. Co.,* No. 13-0648 (KM)(MAF), 2016 WL 4705449, at *7 (D.N.J. Sept. 8, 2016) ("New Jersey claim preclusion law, like federal law, has three essential elements: (1) a *final judgment* on the merits; (2) a prior suit involving the same parties or their privies; and (3) a subsequent suit based on the same transaction or occurrence." (emphasis added) (citing *Watkins v. Resorts Int'l Hotel and Casino, Inc.,* 124 N.J. 398, 412, 591 A.2d 592, 599 (1991)).

the same transactional facts." *Arena v. Borough of Jamesburg, Middlesex Cty.*, 309 N.J. Super. 106, 111, 706 A.2d 790, 792 (App. Div. 1998).

"[B]ecause the entire controversy doctrine is an equitable principle, its applicability is left to judicial discretion based on the particular circumstances inherent in a given case." *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 N.J. 310, 323, 662 A.2d 523, 529–30 (1995). I therefore consider that the New Jersey courts have shown some willingness to relax the finality requirement where the party invoking the entire controversy doctrine has been guilty of some sort of manipulation of the judicial system.[13]

---

[13]     In certain circumstances, especially where a plaintiff manipulates the judicial system in order to fragment litigation, the principles underlying the entire controversy doctrine may mandate that a suit be barred *even though it stems from the dismissal of a prior action without prejudice.*

*Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 N.J. 310, 333, 662 A.2d 523, 534 (1995) (emphasis added) (overruled on other grounds by *Olds v. Donnelly*, 150 N.J. 424, 696 A.2d 633 (1997)). *See also DiTrolio v. Antiles*, 142 N.J. 253, 279, 662 A.2d 494, 508 (1995) ("Although a settlement or a dismissal without prejudice is a factor a court should consider when applying the entire controversy doctrine, neither is dispositive in the circumstances of this litigation.").

The New Jersey Appellate Division has suggested that the finality rule can be applied even more flexibly. In *Archbrook Laguna, LLC v. Marsh*, 414 N.J. Super. 97, 108 (App. Div. 2010), the court acknowledged the oft-quoted rule that "the entire controversy doctrine only precludes *successive* suits involving related claims." *Id.* at 107 (quoting *Kaselaan & D'Angelo Assocs., Inc. v. Soffian*, 290 N.J. Super. 293, 299, 675 A.2d 705 (App. Div. 1996)). But the *Archbrook* court determined it could apply the Entire Controversy doctrine even though the New Jersey state suit was filed while another state court suit (in Georgia) was pending, because the Georgia suit had meanwhile reached final judgment. *Id.* at 104. *See also Youssef v. Dep't of Health & Sr. Servs.*, 524 F. App'x 788, 791 (3d Cir. 2013) (explaining that *Archbrook* clarifies that the "successive suits" rule does "not foreclose the application of the doctrine after one of two simultaneously pending suits concluded.") The court also considered that the second-suit plaintiff had elected to abort its counterclaims in the Georgia suit by having them dismissed without prejudice in order to pursue similar claims in the second suit. The court thus remarked that its "opinion may be viewed as a condemnation of this type of forum shopping . . . ." *Id.* at 110.

The New Jersey Appellate Division has suggested that the finality rule can be Here, by contrast, the State action never reached final judgment, and, as noted in text, it was Kearny, not Plaintiffs, which dismissed the earlier action. Therefore, I do not think the facts weigh in favor of relaxing the finality requirement here.

No such factors are present here. Indeed the prior action was dismissed, not by Plaintiffs, but one of the defendants here. I have before me Kearny's abrupt and still unexplained voluntary dismissal of the prior foreclosure action. Added to that is the telling fact that only BANA and Countrywide—not Kearny, the party directly involved in the earlier action—have moved under the entire controversy doctrine. All in all, I believe that application of the doctrine here would be inconsistent with its equitable purposes.

In sum, *res judicata* doctrines do not extinguish Plaintiffs' claims here, and the motion to dismiss on those grounds is denied.

### 3. Standing

The defendants contend that Plaintiffs lack standing. Standing has a Constitutional aspect, which implicates the court's subject matter jurisdiction under Rule 12(b)(1); it also has a statutory aspect, which may be considered under Rule 12(b)(6). Under the particular circumstances of this case, however, the distinction may make little difference.

Under Article III of the U.S. Constitution, a plaintiff must establish injury-in-fact to have standing to bring any claim in federal court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). That constitutional injury must be "a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (citing *Lujan, supra*).

This standing inquiry overlaps with the prudential, zone-of-interests component of standing as traditionally understood. That traditional understanding, however, has been undermined by more recent Supreme Court precedent. In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, the Court recategorized the zone-of-interest analysis as part of the inquiry into whether plaintiff possesses a cause of action. *See* 134 S. Ct. 1377, 1387 (2014); *Maher Terminals v. The Port Authority of New York and New Jersey*, 805 F.3d 98, 105 (3d Cir. 2015). "Whether a plaintiff comes within the 'zone of interests' is an issue that requires [the Court] to determine, using traditional tools of statutory

21

interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 134 S. Ct. at 1387 (internal quotation marks omitted). In the current context, that is a Rule 12(b)(6) issue.

The RICO statute, 18 U.S.C. § 1964(c), defines a class of persons who may be plaintiffs, but in doing so also defines the kind of injury redressable by a RICO claim:

> Any person *injured in his business or property by reason of a violation of section 1962* of this chapter may sue therefor in any appropriate United States district court . . . .

18 U.S.C. § 1964(c) (emphasis added). Under the statute, "the questions the Court must answer are: 1) Were the Plaintiffs injured 'in [their] business or property'?; and 2) Did that injury occur 'by reason of a violation of section 1962'?" *Mruz v. Caring, Inc.*, 991 F. Supp. 701, 711 (D.N.J. 1998). *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 266, 112 S. Ct. 1311, 1316–17, 117 L. Ed. 2d 532 (1992) (determining that Congress did not mean to "allow all factually injured plaintiffs to recover" under 18 U.S.C. § 1964(c), and thus a cause of action requires proximate, rather than but-for cause); *see also Rehkop v. Berwick Healthcare Corp.*, 95 F.3d 285, 289 (3d Cir. 1996).

In this case, the Article III injury-in-fact and the statutory standing issues tend to converge. True, the complaint may fail to allege some kind of injury peculiar to RICO; but to hear defendants tell it, that failure is emblematic of a broader failure to allege any kind of cognizable injury at all. (Kearny Br. 11–12; BANA Br. 12–13) Whether viewed through a constitutional or a statutory lens, that injury must be a "concrete" one, and it must be one suffered by the Plaintiffs themselves. *See In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 638 (3d Cir. 2015), *cert. denied sub nom. GlaxoSmithKline LLC v. Allied Servs. Div. Welfare Fund*, 136 S. Ct. 2409 (2016) ("[A]lleged injury to business or property within the meaning of RICO. . . . requires proof of a concrete financial loss") (internal quotation marks and citation omitted)).

22

Counts one and two allege injury to Plaintiffs' property by way of the defendants' unlawful collection of loan payments. Plaintiffs, however, do not dispute that they owed loan payments to *some* party. They only allege that, because of irregular or invalid assignments, no defendant here was the rightful assignee of the rights possessed by creditors under the note and mortgage. In opposition to that argument, the defendants cite the rule often applied by courts in this district that a "mortgagor, or borrower, does not have standing to allege that an assignment between two third parties is invalid." (Kearny Br. 12 (quoting *English v. Fed. Nat. Mortg. Ass'n*, No. CIV.A. 13-2028 CCC, 2013 WL 6188572, at *4 (D.N.J. Nov. 26, 2013)). *See also Pillitteri v. First Horizon Home Loans*, No. CIV.A. 14-03076 FLW, 2015 WL 790633, at *6 (D.N.J. Feb. 25, 2015) ("there is no prudential reason for Plaintiffs to have standing to collaterally attack their foreclosure in a separate judicial proceeding," and therefore "Plaintiffs do not have standing to challenge the validity of their mortgage assignments in this judicial proceeding.")

Those holdings rest on the fundamental principle that assignment of a mortgage generally has no impact on the borrower's rights or obligations. *See U.S. Bank Nat. Ass'n v. Radisic*, No. A-4160-13T3, 2015 WL 4275977, at *4 (N.J. Super. Ct. App. Div. July 16, 2015) ("Defendants do not deny the debt and do not assert that they face conflicting claims as to whom they owe the money. Therefore, they have no standing to challenge the assignment.") Plaintiffs here have not alleged that they have overpaid, or that they were not credited for payments they made. Far from it. Nor do they allege that any entities *other than* the defendants have ever tried to collect payment or to institute foreclosure proceedings.

Counts one and two fail to allege facts in support of any loss that would give rise to a claim for damages. Plaintiffs admit that they executed a mortgage to secure payment of a $650,000 refinance loan in 2007 (Compl. ¶ 11); that Countrywide Servicing serviced the loan (*id.* ¶ 12); that BAC Servicing succeeded Countrywide (*id.* ¶ 15); and that BAC Servicing merged into BANA

23

(*id.* ¶ 17). In short, Plaintiffs got what they bargained for (the lender's advancement of $650,000), and in return obligated themselves to make monthly payments of principal and interest. It is not plausible that payments of amounts due monthly could in any sense constitute a "loss." These were amounts admittedly agreed to under the terms of the note and mortgage. A concrete financial injury might arise if, *e.g.*, that the plaintiffs somehow were not properly credited for such payments, if the servicers directed payments to the wrong entity, if they did not go to reduce the principal or interest owed, or if Plaintiffs were subjected to conflicting payment demands. No such allegation is made.[14] Accordingly, Plaintiffs have alleged no particular injury, let alone injury proximately caused by the defendants' alleged violation of RICO Section 1962(c) or (d).

Counts three, four, and five allege injury to Plaintiffs' property by way of BANA's gains on the CDS investment vehicles. The allegation seems to be that investment portfolios maintained by BANA included duplicates of Plaintiffs' mortgage loan. (*See, e.g.*, Compl. ¶¶ 97, 192, 218, 239) Here, again, Plaintiffs cannot have sustained any loss unless *they* were subjected to duplicate obligations. There is no allegation that they were. Assume, as Plaintiffs do, that BANA used the same mortgage more than once to back a CDS. This tactic

---

[14]      I find persuasive Third and Second Circuit cases holding that a mortgagor who, for these same reasons, alleges no plausible injury, lacks standing to challenge defendants' ownership of mortgage documents on the basis of noncompliance with pooling and servicing agreements governing the trusts to which the mortgage loans were assigned. *See Gilarmo v. U.S. Bank NA ex rel. CSAB Mortg. Backed Trust 2006-1*, 643 F. App'x 97, 101 (3d Cir. 2016) ("[Plaintiff] admits that she took out the loan, that she is in default, and she does not argue that she ever paid more than the amount due on her loan, or that she received a bill or demand from any entity other than the defendants. She does not allege that the allegedly improper transfer interfered with her ability to pay the Note, or that the original lender would have refrained from foreclosure under the circumstances. It seems plain enough here that the allegedly improper assignment merely substituted one creditor for another, without changing her obligations under the Note."); *accord Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 85 (2d Cir. 2014) (plaintiffs lacked standing where they had not pleaded paying more than amounts due, receipt of bills from non-defendants, or any threat of foreclosure by non-defendants).

might contribute to the overleveraging of an already risky structure and expose investors or sponsors of the CDS to loss. But Plaintiffs were not CDS investors; they have no standing to assert the rights of those third parties; and the collapse, or not, of the CDS would have no bearing on their obligations under the mortgage.[15]

Because, as discussed, Plaintiffs lack standing to challenge any allegedly wrongful assignment of their mortgages, and because defendants' alleged gains do not constitute concrete injury to Plaintiffs by any plausible measure, counts three, four, and five, too, must be dismissed for lack of standing.

Count six seeks declaratory and injunctive relief to the effect that the mortgage is unenforceable and that defendants cannot foreclose on it. (BANA Br. 14; Kearny Br. 22; Compl. ¶¶ 242–246, 251–252, Prayer for Relief ¶¶ J–K) An action for a declaratory judgment, like any other, presumes a "justiciable case or controversy [which] require[s] the existence of injury-in-fact." *Sheet Metal Workers Nat. Health Fund v. Amgen Inc.*, No. CIV. A. 07-5295 SRC, 2008 WL 3833577, at *8 (D.N.J. Aug. 13, 2008); *see Lujan*, 504 U.S. at 560. Injunctive relief, too, requires a showing that injury is imminently threatened:

> To seek injunctive relief, a plaintiff must show that he [or she] is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical ... and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Institute,* 555 U.S. 488, 492, 129 S. Ct. 1142, 173 L.Ed.2d 1 (2009). This requirement

---

[15]    Consider, for example, the (real, but now proverbial) scam by which Swindler sells Greenhorn the Brooklyn Bridge. *See generally* Cohen, Gabriel, "For You, Half Price" (November 27, 2005), www.nytimes.com/2005/11/27/nyregion/thecity/for-you-half-price.html. Greenhorn may have a cause of action to recover what he paid Swindler. But the true owner of the Bridge has lost nothing.

With respect to standing, Plaintiffs stand in the shoes of the Bridge owner. From one perspective, Plaintiffs seem to be making the rather nebulous claim that their mortgage was invoked in vain between third parties. From another perspective, they seem to be making the rather inequitable claim that they are entitled to a share of allegedly ill-gotten gains.

guarantees that standing only exists where "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 221, 94 S. Ct. 2925, 41 L.Ed.2d 706 (1974). *Schlesinger v. Reservists Comm. To Stop the War,* 418 U.S. 208, 221, 94 S. Ct. 2925, 41 L.Ed.2d 706 (1974).

*Capogrosso v. 30 River Court E. Urban Renewal Co.*, 482 F. App'x 677, 680–81 (3d Cir. 2012).[16]

As discussed *supra*, Plaintiffs have not alleged a compensable past injury arising out of allegedly unlawful transfers between third parties. Plaintiffs have similarly failed to allege that they are threatened with an imminent future injury.[17] They fail to allege how they are threatened by the defendants' alleged inability to lay their hands on Plaintiffs' original mortgage note (if that is what

---

[16]    Plaintiffs' Prayer for Relief suggests they also seek "equitable relief" for the alleged RICO violations, pursuant to 18 U.S.C. § 1964(a), under count six. Neither the Supreme Court nor the Third Circuit has addressed whether RICO authorizes a court to award private plaintiffs equitable relief under this provision. The Seventh and Second Circuit have held that the remedy is available, but a private plaintiff still must prove injury by violation of § 1962 to obtain this relief. *See Chevron Corp. v. Donziger*, 833 F.3d 74, 137 (2d Cir. 2016) ("We conclude that a federal court is authorized to grant equitable relief to a private plaintiff who has proven injury to its business or property by reason of a defendant's violation of § 1962"); *see National Organization for Women, Inc. v. Scheidler*, 267 F.3d 687, 699 (7th Cir. 2001), *reversed on other grounds*, 537 U.S. 393, 123 S. Ct. 1057 (2003). Therefore, Plaintiffs have failed to establish standing for this relief for the reasons expressed above.

[17]    Count six also includes conclusory allegations that BANA, in agreement with Kearny, violated RICO Act Sections 1962(c) and 1962(d), causing Plaintiffs $4,180,729.31 worth of "ongoing" "injury in their property," by violation of April 13, 2011 and April 4, 2012 consent orders that prohibit BANA "from making false assignments of mortgages, representations regarding promissory Notes, affidavits and certifications in foreclosure proceedings, among other wrongdoings . . . ." (Compl. ¶¶ 247–250 (citing nonfunctional URLs regarding the consent orders). It appears these consent orders were entered into between BANA and a state attorney general, for one, and BANA and the Office of the Comptroller of the Currency, for the other. Even assuming Plaintiffs have standing to enforce these consent orders (they do not allege that they do) and that BANA violated the terms, for the same reasons discussed in the text, Plaintiffs fail to plausibly allege that any violation proximately injured Plaintiffs. Additionally, Plaintiffs do not seek independent recovery for these alleged violations but rather, the declaratory judgment and injunctive relief as to the enforceability of Plaintiffs' mortgage, also discussed *supra* and *infra*. Therefore, these undeveloped RICO allegations in count six also fail under 12(b)(1) and 12(b)(6) standards.

they are saying). That failure has, if anything, benefited Plaintiffs by precipitating Kearny's voluntary dismissal of the State action, despite Plaintiffs' default. The absence of the note does not concretely and presently threaten Plaintiffs' interests in any way, except insofar as Kearny may someday renew its efforts to foreclose.

There is no allegation, however, that a second foreclosure is imminent. And, as Kearny correctly points out: "In the event Kearny proceeds with foreclosure in state court and refiles its foreclosure complaint, Plaintiffs will have an opportunity to address any remaining concerns regarding the Mortgage and Note in that court and at that time." (Kearny Br. 23) In this sense, I do not see how the speculative possibility of Kearny's recommencing a foreclosure proceeding in state court constitutes an actual and imminent threat of injury. Still less should this Court pre-try allegations and defenses based on the possibility of such an action's being brought. If such a renewed foreclosure action is filed, any and all viable claims and defenses may be asserted there. In short, count six, like the others, must be dismissed.

As to count six, there is an additional basis for dismissal, to the extent Plaintiffs seek relief under state law. Pursuant to 28 U.S.C. § 1367(c)(3), upon dismissal of all claims over which it has original jurisdiction, a federal district court may decline to exercise supplemental jurisdiction over a related state law claim. I have dismissed Plaintiffs' federal RICO claims. Other than supplemental jurisdiction, I perceive no alternative grounds for jurisdiction over state law claims.[18] We are at an early procedural stage, so this court's investment of resources would not weigh in favor of retention of jurisdiction. I would therefore dismiss count six on these alternative grounds as well.

---

[18]    Plaintiffs have not alleged diversity jurisdiction. It appears that both Plaintiffs and Kearny are citizens of New Jersey (Compl. ¶ 4–6, 9), and that complete diversity is therefore lacking. *See* 28 U.S.C. § 1332(a); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The federal declaratory judgment statute, 28 U.S.C. § 2201, is a procedural mechanism only; it is not an independent source of jurisdiction. *Skelly Oil Company v. Phillips Petroleum Company*, 339 U.S. 667, 671-72, 70 S. Ct. 876, 879 (1950).

Other issues are raised by the parties, but I do not reach them. The defendants' motions to dismiss the complaint in its entirety are granted.

## Conclusion

For the reasons expressed above, the Defendants' motions to dismiss (ECF nos. 15, 16) are granted. This dismissal is without prejudice to the plaintiffs' filing within 30 days a proposed amended complaint that remedies the deficiencies identified here. A separate order will issue.

Dated: December 13, 2016

KEVIN MCNULTY
United States District Judge